**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:26-CV-61130-MIDDLEBROOKS/AUGUSTIN-BIRCH**

**MELISSA DE LA PAZ LOPEZ,**

      **Petitioner,**

**v.**

**WARDEN OF BROWARD**
**TRANSITIONAL CENTER,** *et al.*,

      **Respondents.**

_____/

**REPORT AND RECOMMENDATION TO**
**GRANT PETITION FOR WRIT OF HABEAS CORPUS**

This cause comes before the Court on Petitioner Melissa De La Paz Lopez's Petition for

Writ of Habeas Corpus under 28 U.S.C. § 2241. DE 1. The Honorable Donald M. Middlebrooks,

United States District Judge, referred the Petition to the undersigned United States Magistrate

Judge for a Report and Recommendation. DE 3. Respondents filed a response to the Petition, and

Petitioner filed a reply and a supplement. DE 5; DE 6; DE 9. The Court has carefully considered

the briefing and the record and is fully advised in the premises. For the reasons set forth below,

the Court **RECOMMENDS** that the Petition [DE 1] be **GRANTED**.

### I.      Background

Petitioner is a citizen and national of Cuba. DE 5-1 at 2. In 2013 or 2014, she was paroled

into the United States for a two-year period under the Cuban Refugee Adjustment Act. *Id.* She

remained in the United States beyond that two-year period. *Id.* She was taken into immigration

custody following a 2017 conviction of identity theft. DE 5-3 at 1. The U.S. Department of

Homeland Security then sought to remove Petitioner from the United States on the basis that she

was convicted of a felony involving moral turpitude committed within five years of admission. DE 5-5 at 1. In March of 2017, an Immigration Judge ordered that she be removed from the United States to Cuba. DE 5-6. In June of 2017, she was released from custody pending her removal under an Order of Supervision. DE 1-3 at 2–3. One of the terms of her Order of Supervision was that she appear for required check-ins. *Id.* at 3.

According to Petitioner, she fully complied with the terms of her Order of Supervision, including by appearing for check-ins. DE 1 ¶ 20. When she appeared for one such check-in on April 15, 2026, Immigration and Customs Enforcement ("ICE") detained her. ICE served her with a Notice of Revocation of Release stating that her Order of Supervision was revoked. DE 5-8. On the Notice form, boxes are checked corresponding to language stating that "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal" and "ICE is seeking a travel document to effect your expeditious removal to Cuba." *Id.* at 1. The Notice also states, "On 04/15/2026, you will be afforded an informal interview at which you will be given an opportunity to respond to the reasons for this revocation. You may submit any evidence or information you wish to be reviewed in support of your release." *Id.* at 2. According to Deportation Officer Kirk Henry, who signed a declaration under penalty of perjury, on April 15, ICE "conducted an initial informal interview of Petitioner to afford her an opportunity to respond to the reasons for the [Order of Supervision] revocation," and "Petitioner refused to be interviewed." DE 5-2 ¶ 10.

On April 16, ICE issued a Notice of Removal informing Petitioner that it intends to remove her to Mexico. DE 5-9. She is in custody at the Broward Transitional Center. DE 1-2 at 2; DE 5-4. According to Deportation Officer Henry, "ICE intends to continue with efforts to effect

2

Petitioner's removal to Cuba or Mexico." DE 5-2 ¶ 11. Petitioner asserts that she has moved the Immigration Court to reopen her removal proceeding and stay her removal. DE 6 at 3.

## II.    Analysis

The Petition for Writ of Habeas Corpus pleads five counts. Counts One and Two are for violation of Petitioner's substantive and procedural due process rights under the Fifth Amendment of the United States Constitution. DE 1 at 9–10. Counts Three through Five are for violation of 8 C.F.R. § 241.4(l), the *Accardi* Doctrine,[1] and the Administrative Procedure Act. *Id.* at 11–13.

Before proceeding, it is important to frame the challenge Petitioner has raised. She states that her Petition for Writ of Habeas Corpus does not challenge the 2017 removal order or the execution of her removal order. DE 6 at 1 ("Petitioner does not challenge her removal order or its execution."); *id.* at 3 ("Petitioner does not challenge any decision to execute her removal order."); *id.* at 4 ("Petitioner does not seek review of her removal order."). She also states that her Petition for Writ of Habeas Corpus does not challenge the duration of her detention thus far. *Id.* at 4 ("This case is not about the length of Petitioner's detention."). Instead, according to Petitioner, her Petition for Writ of Habeas Corpus challenges the process by which ICE revoked her Order of Supervision. *Id.* at 1 ("Petitioner's habeas petition presents a straightforward claim stating that Respondents unlawfully revoked Petitioner's Order of Supervision and detained her without complying with mandatory regulatory procedures and constitutional due process."); *id.* ("Petitioner challenges the process by which Respondents revoked her supervised release, not the execution of her removal order."); *id.* at 4 ("This case presents a different question of whether Respondents complied with the procedures governing the revocation of supervision.").

---

[1] *See U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

Respondents contend that the only proper Respondent to this action is the Warden of the Broward Transitional Center, and the remaining Respondents should be dismissed as improper parties.  They also dispute that this Court has jurisdiction to resolve the Petition for Writ of Habeas Corpus.  Finally, they argue that each of the counts in the Petition for Writ of Habeas Corpus is without merit.

### A.  The Proper Respondent

A federal court may entertain a petition for a writ of habeas corpus by a detainee who contends that he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  This statute gives federal courts jurisdiction to consider challenges to the lawfulness of immigration-related detentions.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

A writ of habeas corpus must "be directed to the person having custody of the person detained."  28 U.S.C. § 2243.  "[T]here is generally only one proper respondent to a given prisoner's habeas petition," and that is the custodian "with the ability to produce the prisoner's body before the habeas court."  *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).  Petitioner has provided no argument or authority to show why individuals other than the warden of the facility where she is detained are appropriate Respondents in this case.  The claims against all Respondents other than the Warden of the Broward Transitional Center should be dismissed.

### B.  Jurisdiction

Respondents maintain that, under 8 U.S.C. § 1252(g), this Court does not have jurisdiction to resolve the Petition for Writ of Habeas Corpus.  Under § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal

orders against any alien." 8 U.S.C. § 1252(g). Section 1252(g) "is not to be construed broadly as a 'zipper' clause applying to the full universe of deportation-related claims, but instead as applying narrowly to only the three 'discrete' governmental actions enumerated in that subsection." *Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 960 (11th Cir. 2015) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)). "[A]lthough 'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review (at least by this provision)." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting *Reno*, 525 U.S. at 482).

As stated above, the Petition for Writ of Habeas Corpus presents a limited challenge. Petitioner contests the process by which ICE revoked her Order of Supervision. DE 6 at 1, 4. This limited challenge is not against the government's commencement of a proceeding to remove her from the United States, adjudication of a removal proceeding, or execution of her removal order. The limited challenge is instead about the process by which she was detained. That is not one of the three discrete governmental actions listed under § 1252(g).

Because Petitioner's challenge does not fall under § 1252(g), that section does not deprive the Court of jurisdiction. *See Samhan v. Noem*, No. 25-cv-25618, 2026 WL 911290, at *4 (S.D. Fla. Apr. 2, 2026) (ruling that jurisdiction was proper to consider a petitioner's challenge to the bases to revoke his order of supervision and the revocation procedures); *Grigorian v. Bondi*, No. 25-CV-22914, 2025 WL 2604573, at *4 (S.D. Fla. Sept. 9, 2025) (concluding that § 1252(g) did not bar a court from reviewing a petitioner's claim that ICE did not comply with the statutory requirements to revoke his order of supervision), *appeal docketed*, No. 26-11112 (11th Cir. Apr.

5

3, 2026).  Respondents have not identified a statutory provision divesting the Court of jurisdiction to consider the Petition for Writ of Habeas Corpus.

### C.  Counts Two and Three

Turning to the merits of the Petition for Writ of Habeas Corpus, the Court considers Counts Two and Three first and in conjunction.  Count Two alleges violation of Petitioner's procedural due process rights under the Fifth Amendment, and Count Three alleges violation of 8 C.F.R. § 241.4(l).  DE 1 at 10–11.

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  The "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Id.* at 693.  "The core of due process is the right to notice and a meaningful opportunity to be heard."  *LaChance v. Erickson*, 522 U.S. 262, 266 (1998); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotation marks omitted)).

In the context of the revocation of an alien's order of supervision and the return of the alien to custody, 8 C.F.R. § 241.4(l) addresses both notice and the opportunity to be heard.  "Release may be revoked in the exercise of discretion when, in the opinion of the revoking official," the "purposes of release have been served," the "alien violates any condition of release," it "is appropriate to enforce a removal order or to commence removal proceedings against an alien," or the "conduct of the alien, or any other circumstances, indicates that release would no longer be

appropriate." 8 C.F.R. § 241.4(l)(2). "Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole." *Id.* § 241.4(l)(1).[2] "The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.*

Here, Petitioner's Notice of Revocation of Release informed her that her Order of Supervision was revoked because "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal" and "ICE is seeking a travel document to effect your expeditious removal to Cuba." DE 5-8 at 1. One of the permissible bases to revoke release under § 241.4(l)(2) is that revocation "is appropriate to enforce a removal order." 8 C.F.R. § 241.4(l)(2)(iii).

Petitioner contends that the Notice of Revocation of Release was inadequate notice because it did not contain "individualized, contemporaneous findings" and "identifie[d] no violation of supervision and no changed circumstances." DE 6 at 6. But § 241.4(l)(2) does not require individualized reasons, a violation, or changed circumstances, as a reason for revocation may be that revocation "is appropriate to enforce a removal order." ICE did not need—or need to articulate—additional reasons to revoke Petitioner's Order of Supervision. *See Samhan*, 2026 WL 911290, at *4 ("Revocation of the [order of supervision] in this case is governed by § 241.4(l)(2), which expressly authorizes revocation to enforce a removal order. Petitioner has not cited any controlling authority requiring specific findings of flight risk or danger to the community when

---

[2] 8 C.F.R. § 241.4(l)(1) is titled "Violation of conditions of release." However, the notice and informal interview requirements under § 241.4(l)(1) apply to any revocation under § 241.4(l)(2), not only to revocation for violation of conditions of release. *Samhan*, 2026 WL 911290, at *6 ("Here, because Petitioner did not violate any conditions of release, Petitioner's [order of supervision] was revoked under § 241.4(l)(2), not § 241.4(l)(1). Although § 241.4(l)(2) does not expressly provide for an informal interview, the notice and opportunity to respond requirements apply to both sections and apply regardless of the reason for revocation." (citation omitted)); *Grigorian*, 2025 WL 2604573, at *6 (explaining that "courts have interpreted section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation—meaning that the notice and informal interview requirement stated in § 241.4(l)(1) applies to revocation under § 241.4(l)(2)" (quotation marks omitted)).

revoking an [order of supervision] to enforce a removal order under § 241.4(l)(2)." (citation and quotation marks omitted)); *Grigorian*, 2025 WL 2604573, at *4–5 ("§ 241.4(l)(2) provides alternative bases for revocation other than violation of the conditions of release or changed circumstances. . . . The Notice of Revocation indicates that the reason for revocation was . . . the Order that made Petitioner's Order of Removal final. And § 241.4(l) permits revocation in the exercise of discretion when, in the opinion of the revoking official it is appropriate to enforce a removal order." (ellipsis, citation, and quotation marks omitted)). Petitioner received the notice of revocation she was due.

Turning to Petitioner's opportunity to be heard, the Notice of Revocation of Release informed her, "On 04/15/2026, you will be afforded an informal interview at which you will be given an opportunity to respond to the reasons for this revocation. You may submit any evidence or information you wish to be reviewed in support of your release." DE 5-8 at 2. According to Respondents' evidence, on April 15, ICE "conducted an initial informal interview of Petitioner to afford her an opportunity to respond to the reasons for the [Order of Supervision] revocation," and "Petitioner refused to be interviewed." DE 5-2 ¶ 10.

This evidence demonstrates only that, simultaneously with being detained, Petitioner was offered an informal interview. The evidence is inadequate to show that Petitioner received the opportunity to be heard that due process and § 241.4(l)(1) require. There is no evidence that she had advance warning that, when she appeared for her check-in on April 15, her release would be revoked, such that she would have come prepared with evidence or information to support her release. There is no evidence that she had any time to gather evidence or information to support her release. "Where Petitioner arrived at [her] ICE check-in and was only then informed of the revocation and immediately taken into custody, Petitioner had no meaningful opportunity to

understand the reasons for revocation or gather information to respond accordingly." *Samhan*, 2026 WL 911290, at \*6. The reason an informal interview must be afforded "*after* [the detainee's] return to Service custody" is so the detainee has this meaningful opportunity. *See* 8 C.F.R. § 241.4(l)(1) (emphasis added). Respondents have not shown that Petitioner's encounter with ICE on April 15 provided her a meaningful opportunity to be heard.

"The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands." *Grigorian*, 2025 WL 2604573, at \*9. "The failure to provide Petitioner with an informal interview promptly after [her] detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause." *Id.* at \*10. This failure "compels Petitioner's release."[3] *Id.*; *see also Samhan*, 2026 WL 911290, at \*6 ("Because Petitioner's [order of supervision] was revoked and he was detained in violation of stated procedures and his Due Process rights, Petitioner's detention is unlawful. Accordingly, Petitioner shall be released.").

### III.   Recommendation

The Court recommends that Petitioner's claims against all Respondents other than the Warden of the Broward Transitional Center be dismissed. The Court further recommends that the Petition for Writ of Habeas Corpus [DE 1] be **GRANTED** on Counts Two and Three. The Court recommends that the Warden of the Broward Transitional Center be ordered to release Petitioner from custody within 24 hours of any order adopting this Report and Recommendation, subject to

---

[3] Because the Court concludes that Petitioner must be released from custody under Counts Two and Three of the Petition for Writ of Habeas Corpus, the Court need not address whether the remaining counts also compel her release. *See Samhan*, 2026 WL 911290, at \*7 ("Because the Court finds that Petitioner must be released due to the Respondents' violation of Petitioner's due process rights for failing to provide the required informal interview, the Court need not address Petitioner's remaining claims in the Petition . . . .").

the terms of her Order of Supervision.  The Court recommends that the Warden of the Broward Transitional Center be ordered to return all personal belongings to Petitioner upon her release and to file a certification of compliance with the order within 24 hours of her release.

While a party normally has fourteen days to serve and file written objections to any of the findings and recommendations in a report and recommendation, *see* 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a), this case warrants a shorter objection period.  Within **seven days** of being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations.  Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 22nd day of June, 2026.

PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE